AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
DEC 1 2 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One Apple iphone cellular phone, IMEI:<br>#353013091192613; seized from Collin Lee DAVIS | )<br>)<br>)  Case No.<br>)<br>)  **18MJ6234**<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Southern___ District of ___California___ *(identify the person or describe property to be searched and give its location):* **See Attachment A**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* **See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___841, 846 etc___, and the application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Anthony Colon, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/12/18

_____
Judge's signature

City and state: San Diego, California          Honorable Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

Case 3:18-mj-06234-BLM   Document 1   Filed 12/12/18   PageID.2   Page 2 of 10

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Anthony Colon, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application authorizing a search warrant for the following digital device, currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in San Diego, California, seized from Collin Lee DAVIS (DAVIS) on July 21, 2018 (more particularly described in Attachment A and incorporated herein):

    a. One Apple iphone cellular phone, IMEI: #353013091192613; seized from DAVIS (the SUBJECT DEVICE)

2. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

3. Based on the information below, there is probable cause to believe that the SUBJECT DEVICE 1 is an instrumentality and contain evidence of crimes, specifically, violations of Title 18, United States Code, Section 922(g)(1) – Felon in Possession of a Firearm and Title 21, United States Code, §§ 841, and 846, Conspiracy to Distribute and Distribution of a Controlled Substance, and Title 18, U.S.C., Sec. 924(c) - Possession of a Firearm in Furtherance of a Drug Trafficking Felony (the SUBJECT OFFENSES).

## EXPERIENCE AND TRAINING

4. I am a Special Agent (SA) with ATF, United States Department of Justice, assigned to the San Diego, California Field Office. I have been employed as an ATF SA since January 2018. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program and the ATF National Academy's Special Agent Basic Training course. As an ATF SA, I have received training in federal firearms laws and have been the affiant on search and arrest warrants for such violations, to include investigations on persons prohibited from possessing firearms. Prior to my employment with the ATF, I was employed as a Customs and Border Protection (CBP)

1

Officer with the Department of Homeland Security for approximately five years at Miami International Airport in Miami, Florida. I received training for my role as a CBP Officer at FLETC's Officer Basic Training program. I also received training at the Miami-Dade Public Safety Training Institute through their Independent Police Academy program located in Miami, Florida.

5. Based upon my training and experience as a Special Agent, as a law enforcement officer, and consultations with other law enforcement officers experienced in illegal firearms possession, trafficking, drug dealing, and trafficking investigations, I am also aware that:

    a. Drug dealers and traffickers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b. Drug dealers and traffickers and their accomplices will use cellular telephones to coordinate with each other, contact their buyers and suppliers, and negotiate the purchase or sale of their illegal merchandise;

    c. Drug dealers and traffickers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their buyers or suppliers will arrive at predetermined locations;

    d. Drug dealers and traffickers will use cellular telephones to direct buyers or suppliers to synchronize an exact drop-off and/or pick-up time of their illegal merchandise;

    e. Drug dealers and traffickers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

    f. Because drug dealers are operating a criminal venture (thereby making it unlikely that they will report losses to law enforcement), because their business relies almost exclusively on cash transactions, and because their illicit product, if stolen, is easily resold, drug dealers are often targets for other criminals. Thus, drug dealers and traffickers often arm themselves with firearms and other weapons to protect their person, proceeds, and drugs from rival dealers, customers, and other criminals;

   g. It is common for individuals involved in the illegal possession or acquisition of firearms and ammunition to use cellular telephones, computers, tablets, and personal digital assistants with internet access, storage, or photograph and video capabilities to take, store, post on social media, or on cloud storage applications, photographs, videos, and other media of their firearms;

   h. It is common for individuals who are involved in the illegal possession or acquisition of firearms and ammunition to keep telephone numbers, text or audio conversations, and contact information for their firearms and ammunition suppliers and co-conspirators on cellular telephones, computers, tablets, and personal digital assistants; and

   i. The use of cellular telephones by individuals involved in the illegal possession or acquisition of firearms and ammunition, and drug dealers, tends to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

6. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists, and stored text messages. Much of the evidence generated by a person involved in the illegal possession or acquisition of a firearm or a drug dealer's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

7. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law enforcement personnel may have learned in connection with this ongoing investigation. In the affidavit, all dates and times are approximate.

8. I have knowledge of the facts set forth below based on my review of the reports, recorded statements, and evidence collected in this case.

## FACTS SUPPORTING PROBABLE CAUSE

9. On July 21, 2018, at approximately 9:50 p.m., Oceanside Police Department officers responded to a radio call regarding an individual in a suspicious vehicle, near 115 Crouch Street in Oceanside, California.

10. Upon arriving in the area, officers noticed an individual, later identified as DAVIS, unconscious in a white Jeep bearing license plate 6ZLL093. The engine of the vehicle was running, the lights were on, and DAVIS appeared to be sleeping. Officers knocked on the window, waking DAVIS up. DAVIS appeared disorientated and, his pupils were dilated, watery, and bloodshot, and his speech was slurred. DAVIS also did not have a driver's license on his person.

11. Officers had DAVIS exit the vehicle. As he exited, he appeared to kick a piece of tinfoil with burnt residue under the front seat. Officers then handcuffed DAVIS because, based on their training and experience, he appeared to be under the influence of a controlled substance. Records checks confirmed that DAVIS was a narcotics registrant.

12. Officers asked for and received consent to search the vehicle for DAVIS' identification. An officer opened the vehicle's center console and noticed a set of chrome metal knuckles, a violation of California Penal Code Section 21810. Officers then conducted a further search of the vehicle and discovered a white powder that field-tested positive for cocaine. Officers also located what appeared to be approximately 66 Xanax pills and 9 Bupropion pills in the center console, along with an electronic scale.

13. A search of the trunk of the vehicle uncovered a large plastic container. In the container, officers found an AR-15 style rifle bearing no serial number. They also found a 30-round magazine in the same container. Finally, officers recovered the SUBJECT DEVICE.

14. Prior to his *Miranda* advisal, DAVIS informed the officers that he had used cocaine while in the vehicle. Post-*Miranda*, DAVIS admitted possession of the metal knuckles, cocaine, Xanax, and Bupropion, which he stated was for his personal use. He

also admitted ownership of the rifle and magazine, but denied knowing that it was illegal for him to possess or that the rifle itself was illegal due to its specifications.

15. Further checks of the rifle determined that it had an overall length of 24 inches and a barrel length of 7.5 inches. Test firing also determined that the rifle was fully automatic. Finally, preliminary database checks determined that the firearm was not registered in the National Firearms Registration and Transfer Record.

16. A review of DAVIS' criminal history revealed that he has a prior felony conviction for possession of a controlled substance.

17. Laboratory analysis confirmed that the white powder was cocaine, with a net weight of 1.042 grams, and that the 66 tablets were Alprazolam (also known as Xanax), with a net weight of 16.88 grams.

18. Based upon my experience and training, and consultation with other law enforcement officers experienced in controlled substance investigations, the net amount of cocaine would not be considered an amount for distribution. However, the Alprazolam (Xanax), based on the net weight and amount of tablets, could be a distributable amount.

19. Based upon my experience and training, consultation with other law enforcement officers experienced in firearms and controlled substance investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the SUBJECT OFFENSES, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, videos, pictures, and other digital information, are stored in the SUBJECT DEVICE.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

20. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and

rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**GENUINE RISKS OF DESTRUCTION**

23. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case,

6

only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

24. The United States has not attempted to obtain this information by other means.

## CONCLUSION

25. Based on my training and experience, and the foregoing facts, I believe there is probable cause to believe the items listed above, as described in ATTACHMENT B, which are the fruits, instrumentalities, and evidence of the SUBJECT OFFENSES will be found in the SUBJECT DEVICE, as described in ATTACHMENT A.

_____
Anthony Colon, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed before me this __/2__ day of December, 2018.

_____
HONORABLE BARBARA L. MAJOR
United States Magistrate Jud

7

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched:

    (SUBJECT DEVICE) One Apple Iphone cellular phone, IMEI: #353013091192613; seized from DAVIS

SUBJECT DEVICE 1 is currently in the possession of Bureau of Alcohol, Tobacco, Firearms and Explosives, San Diego, CA.

## ATTACHMENT B

### ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 18, United States Code, Section 922(g)(1) – Felon in Possession of a Firearm and Title 21, United States Code, §§ 841, and 846, Conspiracy to Distribute and Distribution of a Controlled Substance, and Title 18, U.S.C., Sec. 924(c) - Possession of a Firearm in Furtherance of a Drug Trafficking Felony:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to illegally acquire and possess firearms and/or illegally acquire and distribute controlled substances;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition and possession of firearms and/or the illegal acquisition and distribution of controlled substances;

    c. tending to identify co-conspirators, criminal associates, sources, or others involved in the illegal acquisition and possession of firearms and/or illegal acquisition and distribution of controlled substances;

    d. tending to identify travel to or presence at locations involved in the illegal acquisition and possession of firearms and/or illegal acquisition and distribution of controlled substances;

    e. tending to identify the user of, or persons with control over or access to, the SUBJECT DEVICE; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.